UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Cr. No. 07-207 (RJL) |
| RUSSELL PALMER : | |

### MEMORANDUM IN AID OF SENTENCING

On February 15, 2008, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Mr. Russell Palmer entered a plea of guilty before this Honorable Court to one count of distribution of 50 grams or more of cocaine base. Pursuant to Rule 11(c)(1)(C), the parties agreed that a sentencing range of 120 to 156 months (10 to 13 years) is appropriate, and, after hearing from the parties, the Court accepted this agreement. Mr. Palmer will appear before the Court for sentencing on May 9, 2008. For the following reasons, and such other reasons as may be presented at the sentencing hearing, Mr. Palmer respectfully requests that the Court impose a sentence no greater than the mandatory minimum of 120 months.

### Factual Background

Mr. Palmer is a 53-year-old man who has been using drugs since he was in the sixth grade and has been addicted to heroin and crack cocaine for more than 30 years. As a direct result of his addiction, Mr. Palmer has two prior misdemeanor convictions and two prior felony convictions, all of which occurred more than 18 years ago. The misdemeanor convictions were for a 1980 possession of dangerous drugs and a 1985 contempt of court. His felony drug convictions were the result of a 1985 sale of $30 worth of heroin and a 1989 sale of $20 worth of

heroin. As a result of the 1989 sale, in 1990, he was sentenced to a 6 to 18 year period of incarceration.

Mr. Palmer grew up in the District of Columbia, where he lived with his parents and his seven siblings. When he was in the eleventh grade, he dropped out of school after learning that his girlfriend was pregnant. He then worked at several different jobs, including as a custodian at Friendship Tennis School, and tried to support his girlfriend, who gave birth to his daughter. Mr. Palmer struggled with his addiction over the years, but continued to try to work to help support his daughter. As noted above, he was later incarcerated for the 1989 drug sale. While he was incarcerated for that offense, Mr. Palmer's 21 year old daughter was shot and killed.

A short time after his daughter was murdered, in 1996, Mr. Palmer was paroled. The loss of his daughter was devastating, and after his release, his addiction was difficult to control. Nonetheless, he worked hard to try to control his addiction and to maintain employment. He first worked for Filene's Basement, as a clerk, and then for Reliable Copy Center. In 2002, he obtained a job with FedEx Kinkos, and he worked there until October 2007, when a parole warrant was issued and executed as a result of the charges filed in this case. Despite his ability to maintain employment, Mr. Palmer was not able to control his addiction. He again turned to selling drugs and, as a result, now faces a mandatory minimum sentence of 120 months.

## **Argument**

When determining an appropriate sentence, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentenced imposed –

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the Sentencing Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

   **A. The Guidelines.**

The Court cannot simply presume that a Guidelines sentence is reasonable, and must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider. Kimbrough v. United States, 128 S.Ct. 558, 564 (2007); United States v. Booker, 543 U.S. 220 (2005). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). Gall v. United States, 128 S.Ct. 586, 597 (2007). Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] … sentences that might achieve § 3553(a)'s objectives," Booker and §

3

3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." Rita v. United States, 127 S.Ct. 2456, 2463, 2465, 2469 (2007); see also Gall, 128 S.Ct. at 598 ("[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (quoting Koon v. United States, 518 U.S. 81, 113 (1996))). When the Guidelines' "rough approximation" conflicts with the Court's view of the sentence warranted by other § 3553(a) factors, the Court may disregard the sentencing range recommended by the Guidelines in favor of one that is tailored to the circumstances of the defendant. Rita v. United States, 127 S.Ct. at 2463–2464 ("[t]he sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence)").

      The Court has discretion to find that the Guidelines' "rough approximation" of an appropriate sentence would result in a sentence "greater than necessary," because the Court has the discretion to disagree with the Sentencing Commission's policy judgements. See Kimbrough, 128 S.Ct. at 564 ("under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only," thus, treating "the crack/powder disparity effectively mandatory" is error). The Court,"may determine … that, in a particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing" the individual defendant, by "consider[ing] the disparity between the

Guidelines' treatment of crack and powder cocaine offenses."  Kimbrough, 128 S.Ct. at 564 (citing 18 U.S.C. § 3553(a)).  Indeed, as the government readily conceded in Kimbrough, since "the Guidelines 'are now advisory, … courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.' "  Kimbrough, 128 S.Ct. at 570 (some quotation marks omitted; citation omitted; brackets in original).

      1. **Career Offender Provision.**

The Presentence Investigation Report ("PSR") incorrectly assesses three criminal history points and bases a finding that Mr. Palmer is a career offender on a 1985 distribution of heroin offense.  See PSR at ¶ 26.  According to the PSR, the conviction in paragraph 26 is counted because Mr. Palmer's probation was revoked, and he was incarcerated for that offense within the relevant time period.  See U.S.S.G. § 4A1.2(e)(1) and (2).  The report however does not provide sufficient evidence that that occurred.  See United States v. Price, 409 F.3d 436, 445 (D.C. Cir. 2005) ("[W]hen the defendant calls into dispute a presentence report's description of an alleged prior conviction, the Government must demonstrate that the description in the report is based on a sufficiently reliable source to establish the accuracy of that description." ).  The report indicates that Mr. Palmer was incarcerated from 1990 to 1996.  However, it was the conviction listed in paragraph 27, not the conviction listed in paragraph 26, that resulted in his incarceration during that time period -- Mr. Palmer was sentenced to 6 to 18 years for that offense and apparently served the minimum 6 year period because he was paroled in 1996.  Because there is insufficient proof that Mr. Palmer was sentenced for the offense in paragraph 26

(or that offense resulted in his incarceration) within the relevant time period, the Court should not consider that conviction or find that Mr. Palmer is a career offender.

Even if the Court finds that the career offender provision applies, the Court should give little weight to the sentencing range recommended by that provision. This provision significantly overstates Mr. Palmer's criminal history. The convictions at issue occurred more than 18 years ago and were the result of the sales of very small amounts of heroin.

Moreover, among the Guideline's various sentencing provisions, the "career offender" provision deserves the very least deference from this Court as a measure of reasonableness. The principal reason the government and some courts have given for continuing to give the Guidelines as a whole "great weight," i.e., that the Sentencing Commission has "carefully calibrated the extent to which offender characteristics determine a sentence," United States v. Wilson, 355 F. Supp. 2d 1269, 1275 (D. Utah 2005), simply does not apply to the career offender provision. Section 4B1.1 has nothing to do with the "institutional advantages of the Sentencing Commission," id. at 1281, and is not a product of the Commission's expertise or study. Cf. Booker, 543 U.S. at 264 ("[t]he Sentencing Commission remains in place writing Gidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly"). To the contrary, Congress foisted the career offender provision onto the Sentencing Commission through the passage of 28 U.S.C. § 994(h). That statute states that the Sentencing Commission:

> shall assure that the Guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old and has been convicted of a felony that is a crime of violence or a controlled substance offense and has previously been convicted of two or more prior felonies, each of which is either a crime of violence or controlled substance offense.

Id. See also United States v. Phelps, 366 F. Supp. 2d 580, 590 (E.D. Tenn. 2005) (noting the "statutory directive" of 28 U.S.C. § 994(h)). Thus, § 4B1.1 is not a product of the wisdom, study or expertise of the Sentencing Commission. Rather, it simply tracks a statute passed by Congress that contained a highly specific directive for the Commission to enact. See also U.S.S.G. § 4B1.1, Background Note (stating that the career offender provision is a response to a Congressional "mandate," and that 4B1.1 simply "implements the Congressional directive, with the definition of a career offender tracking in large part the criteria set forth in 28 U.S.C. 994(h)"). The career offender provision is a prime example of "the Commission not function[ing] as a sentencing expert in the way [its originating] statute envisioned." United States v. Jaber, 362 F.Supp.2d 365, 374 (D. Mass. 2005).

The definition of a "career offender" foisted on the Commission "subject[s] some defendants to not just substantial, but extraordinary increases in their advisory Guidelines ranges." Phelps, 366 F. Supp. 2d at 590. The court in Phelps found: "In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress' desire to punish recidivism and the purposes set out in § 3553(a)(2)." Id.; see also United States v. Carvajal, No. 04 CR 222AKH, at

*5, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (declining to impose career offender sentence of 262-327 months for conspiracy to distribute crack cocaine and instead imposing non-guideline sentence of 168 months).

The Sentencing Commission itself has recognized the excessive nature of the career offender provision. In its recent publication <u>Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform</u> (November 2004), the Commission identified the career offender provision as a sentencing rule that disproportionately impacts a "particular offender group" but serves "no clear sentencing purpose." The "particular offender group" disparately impacted by the career offender provision is African-American offenders, such as Mr. Palmer. African-American offenders constituted 26% of offenders sentenced under the guidelines in 2000, but were 58% of offenders sentenced under the career offender provision, due mostly to the "inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline." <u>Id.</u> at 131-33.

The career offender provision also in some cases (including the present one) incorporates the crack/powder disparity, which has been widely criticized, as discussed below. In the present case, for example, because Mr. Palmer was found guilty of possession with intent to distribute 50 grams or more of cocaine base, the "offense statutory maximum" is life in prison, and Mr. Palmer's resulting "career offender" guideline offense level is 37, producing a guideline range of 262 to 327. <u>See</u> 21 U.S.C. § 841(b)(1)(A)(iii) <u>and</u> U.S.S.G. § 4B1.1(b). But had Mr. Palmer instead been convicted of cocaine powder in an amount up to 500 grams, his offense statutory maximum would

8

be 20 years and his career offender guideline range would be a 29, producing a guideline range of 155 to 188.  See 21 U.S.C. § 841(b)(1) and U.S.S.G. § 4B1.1(b).  Thus, the career offender provision incorporates a very significant discrepancy between sentences for crack and for cocaine powder.

Thus, even if the Court finds sufficiently reliable proof of the conviction set forth in paragraph 26 of the PSR, the Court should give little weight to the career offender guideline provision.  Rather, the Court should consider the sentencing range that would apply absent that provision.  Without the enhancements imposed by the career offender provision, and including the conviction listed in paragraph 26, Mr. Palmer's offense level would be level 27 and his criminal history category would be category IV.  With these calculations, the sentencing range would be 100 to 125 months.  This range supports Mr. Palmer's request for a sentence at the mandatory minimum of 120 months.

### 2. **Crack/Powder Disparity.**

As noted above, absent the career offender provisions and *without* assessing points for the offense listed in paragraph 26, the sentencing range applicable to Mr. Palmer is 87 to 108 months.  Although this range is based on the 2007 amended guidelines for crack cocaine offenses and is below the statutory mandatory minimum sentence the Court must impose, it continues to reflect an unwarranted disparity between crack and powder cocaine offenses.  A comparison of the applicable sentencing range for this crack cocaine offense with the applicable range for a similar powder cocaine offense also supports Mr. Palmer's request for a sentence at the mandatory minimum, 120 months.

Prior to the 2007 amendments, the guidelines included a 100-to-1 disparity between the sentencing ranges for crack cocaine and powder cocaine offense. The Sentencing Commission repeatedly repudiated that disparity. The Commission "concluded that the 100-to-1 powder to crack ratio fails to meet the objectives of sentencing because it rests on unsupported assumptions about the relative harmfulness of the drugs, it punishes 'retail' crack dealers more harshly than 'wholesale' drug distributors, and it promotes an unwarranted disparity based on race." United States v. Regalado, 518 F.3d 143, 150 (2d Cir. 2005) (quoting Kimbrough, 128 S.Ct. at 568 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 91-103 (May 2002))).

In Kimbrough, the district court took into account the "disproportionate and unjust effect that crack cocaine guidelines have in sentencing," and imposed the mandatory minimum sentence on the crack conviction, which was well below the advisory guideline range, after contrasting the crack guidelines "with the range that would have applied had he been accountable for an equivalent amount of powder cocaine." Kimbrough, 128 S.Ct. at 565. The Court upheld the sentence in Kimbrough, noting the "Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)." Id. at 576. The Court stated that the crack guidelines "do not exemplify the Commission's exercise of its characteristic institutional role" because:

> the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses "greater than

> necessary" in light of the purposes of sentencing set forth
> in § 3553(a). . . . Given all this, it would not be an abuse of
> discretion for a district court to conclude when sentencing a
> particular defendant that the crack/powder disparity yields
> a sentence "greater than necessary" to achieve § 3553(a)'s
> purposes, even in a mine-run case.

Id. at 575.

Prior to the Supreme Court's decision in Kimbrough, the District of Columbia Circuit recognized "that a district court, in sentencing a defendant, may properly take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered cocaine offenses bears no meaningful relationship to a defendant's culpability." United States v. Pickett, 475 F.3d 1347, 1356 (D.C. Cir. 2007) (Rogers, J., concurring). In her concurring opinion, Judge Rogers commended the opinion, noting that the Commission had stated that the 100-to-1 ratio "was unfair and produced extreme sentencing anomalies, thereby failing to accomplish the purposes set forth in . . . § 3553(a)." Id. at 1356 (footnote omitted). She concluded that failure to consider the problems associated with the crack guidelines

> would frustrate the overarching purpose of a sentencing
> scheme to impose just punishments reflecting the
> seriousness of an offense and be contrary to the sentencing
> factors that Congress established in § 3553(a)(2).

Id. at 1357 (footnote omitted).

It is important to note, moreover, that the Sentencing Commission itself acknowledges that the 2007 amended crack cocaine guidelines do not come close to solving the problem with the disparity:

>The Commission, however, views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to those problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

Report to the Congress, Cocaine and Federal Sentencing Policy, (May 2007) ("2007 Report"). See also Kimbrough, 128 S.Ct. at 568-69 (noting that Commission concluded that powder/crack disparity fails to meet sentencing objective set forth by Congress and that Commission has described recent amendment as only partial remedy).

While the amended drug quantity table appears to have been adopted after the Commission had studied the matter more thoroughly than when it adopted the previous table, it still incorporates widely disparate ratios. See Kimbrough, 128 S.Ct. at 573 ("as a result of the 2007 amendment, … the Guidelines now advance a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1"); see also U.S.S.G., Appendix C, Amdt. 706 ("Reason for Amendment") (Nov. 2007). It is difficult, if not impossible, to comprehend how the new crack/powder ratios "provide certainty and fairness" or how it "avoid[s] unwarranted sentencing disparities." See 28 U.S.C. § 911(b). Nor has the Commission provided any sort of empirical or experiential basis to justify varying the crack/powder ratio based on the amount of drugs involved in the offense. Rather, the new ratios are random, arbitrary, and without rational basis.[1]

---

[1] One might perceive a rational basis for progressively escalating the crack/powder ratio correlatively with the base offense level, but the new drug table does not do this. Instead, it varies the ratio without discernable rationale. For example, at base offense level 24, the ratio is 80:1, at base offense level 26, it is 25:1, and at base offense level 28, it is 57:1. Rather than

Adopting a partial remedy to a known problem is one thing, but adopting an irrational, partial remedy is quite another. When the Sentencing Commission promulgates a provision that is based on "unsound judgment," such as the arbitrary crack/powder ratios animating U.S.S.G. § 2D1.1's new drug quantity table, this Court may exercise its discretion to reject that provision of the Guidelines. See Rita, 127 S.Ct. at 2468.

The criticisms lodged against the 100-to-1 disparity continue to apply to the amended ranges. As several United States Senators have recognized:

> It is well-documented that the crack-powder disparity has a disproportionate impact on African-American defendants, their families, and their communities, and as a result has undermined public confidence in the criminal justice system. Such sentencing disparity is completely contrary to the goals of the Sentencing Reform Act, and § 3553(a) enables courts to consider this impact as they develop principled rules on sentencing."

Report to the Congress, Cocaine and Federal Sentencing Policy, (May 2007) ("2007 Report") at 121 n.195 (quoting Brief of Amici Curiae Senators Edward M. Kennedy, Orrin G. Hatch, and Dianne Feinstein in Support of Respondents, at 28, filed in United States v. Claiborne, 439 F.3d 479 (8th Cir.), cert. granted 127 S.Ct. 551 (2006), vacated as moot, 127 S.Ct. 2245 (2007) (per curiam)(because of defendant's death.)).

On November 14, 2006, at a public hearing on federal cocaine sentencing policy held by the Commission, Judge Reggie Walton testified on behalf of the Criminal Law

---

reflect some empirical or experiential lesson that the Commission has learned, the fluctuating ratios seem to be simply a bi-product of the Commission's decision to lower the base offense levels for crack-related cases by two levels throughout the drug quantity table.

Committee of the Judicial Conference. "Judge Walton stated his belief that the current sentencing structure is <u>unconscionable</u>." 2007 Report at B-1 (emphasis added).

The amended guideline range applicable to Mr. Palmer continues to contain a significant unwarranted disparity. Here, because of the amount of crack cocaine included in Mr. Palmer's relevant conduct (93.1 grams), absent the career offender provision, the amended guideline provides for a sentencing range of 87 to 108 months for the drug offense (offense level 27, criminal history category III). The same amount of powder cocaine would have resulted in a sentencing range of 18 to 24 months (offense level 13, criminal history category III). Mr. Palmer is asking only that the Court account for this disparity (in a very small way) by sentencing him to no more than the mandatory minimum term of 120 months. As the findings of the Sentencing Commission demonstrate, there is no reason to sentence Mr. Palmer to a term of incarceration dramatically more severe than a sentence that would be imposed on a defendant who committed the same acts and had the same criminal history, but sold powder, not crack, cocaine.

**B.    The Offense.**

The offense of conviction occurred almost five years ago in 2003, when Mr. Palmer sold 59.2 grams of crack cocaine to a government informant for $2,000. On one occasion prior to that sale, Mr. Palmer sold 26.3 grams to the same informant. There were no additional sales to that informant, and the government did not arrest Mr. Palmer after those sales. In fact, the government did not arrest Mr. Palmer for those sales at any

point. He continued working at his job at FedEx Kinkos, and for the next four years did well.

Then, in the summer of 2007, Mr. Palmer relapsed and on July 25, 2007, he was arrested for distributing two $20 rocks of crack cocaine to an undercover police officer. After his arrest, the police searched his car and found more crack cocaine, a small amount of heroin, and marijuana. As the government candidly admits, Mr. Palmer's conduct in July 2007, standing alone, would not have resulted in federal criminal charges. Government's Memorandum In Aid of Sentencing at 2. However, because of his arrest in July 2007, the charges for the offenses that occurred in 2003 were filed before this Court, along with charges for the 2007 conduct.

### C. The History and Characteristics of Mr. Palmer.

Although Mr. Palmer has two prior felony drug convictions, the conduct underlying those convictions occurred in 1985 and 1989. The 1985 offense resulted from the sale of $20 worth of heroin, and the 1989 conviction resulted from the sale of $20 worth of heroin. His only other convictions -- a misdemeanor conviction for possession of dangerous drugs and a misdemeanor contempt of court conviction -- occurred more than twenty years ago, in 1980 and 1985. After his release on parole in 1996, Mr. Palmer worked hard to maintain employment. Unfortunately, he was unable to control his addiction.

Mr. Palmer is now almost 54 years old. If sentenced to the mandatory minimum 120 month sentence, he will be almost 63 years old when he is released on this sentence (assuming he earns the maximum 15% good time), and he will still face a parole

revocation sentence for the 1989 offense. Mr. Palmer's age mitigates against the need for a sentence any greater than the 120 month mandatory minimum. The United States Sentencing Commission has found that recidivism rates decline relatively consistently as age increases. United States Sentencing Commission, <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u>, at 12, Exhibit 9 (May 2004).

As Judge Hellerstein of the United States District Court for the Southern District of New York has noted, rehabilitation is a goal of punishment and "[t]hat goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." <u>United States v. Carvajal</u>, No. 04 CR 222AKH, 2005 WL 476125 at *6 (S.D.N.Y. Feb. 22, 2005). Other courts have similarly found that "life-extinguishing" sentences provided by the career offender provision are unreasonable. <u>See</u>, <u>e.g.</u>, <u>United States v. Thomas</u>, 360 F.Supp.2d 238, 243 (D. Mass. 2005).

> **D.  The Need for the Sentence to Reflect the Purposes of Sentencing, the Kinds of Sentences Available and the Need to Avoid Unwarranted Disparities.**

The statute require that the Court impose a sentence of 120 months. Under the circumstances here, this mandatory minimum sentence is more than sufficient to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for

the offense, and afford adequate deterrence to criminal conduct. No greater period of incarceration is necessary to protect the public from further crimes of the defendant.

### Conclusion

Because a review of all of the factors set forth in § 3553(a) demonstrates that any sentence greater than the mandatory minimum term would be greater than necessary to effectuate the purposes of sentencing, Mr. Palmer respectfully requests that the Court not impose a term of imprisonment greater than the mandatory minimum of 120 months.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500